UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANN MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>HALLMARK HEALTH SYSTEM, INC./<br>LAWRENCE MEMORIAL HOSPITAL<br>and JULIE CHASE SHAUGHNESSY,<br><br>Defendants. | Civil Action No. 04-cv-12169-REK |

## OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO PROPOUND MORE THAN TWENTY-FIVE INTERROGATORIES

The Defendants, Hallmark Health System, Inc. ("Hallmark") and Julie Chase Shaughnessy, hereby oppose the Plaintiff's Motion for Leave to Propound More than Twenty-Five Interrogatories ("Motion"). The Plaintiff's Motion should be denied because it seeks an apparently unlimited number of interrogatories without providing any compelling reasons that such extraordinary relief is necessary in this case. To the contrary, the Plaintiff's proposed interrogatories – which, when counting discrete subparts, numbers somewhere in the range of 250 – seek an absolutely mind-boggling amount of information, most of which have no relevance whatsoever to the Plaintiff's claims.[1] In support of this opposition, the Defendants state as follows:

1)   Local Rule 26.1(C) limits each <u>side</u> in litigation to 25 interrogatories. The limits on interrogatories were adopted because, among other things, they can be extremely costly to the

---

[1] Indeed, to the extent the Plaintiff is allowed to propound the additional interrogatories in the form of the interrogatories already served on the Defendants (<u>see</u> Exhibits B and C to Plaintiff's Motion), most all of those interrogatories are objectionable for reasons other than numerosity, such as undue burdensomeness, relevance, confidentiality and unintelligibility.

responding party and may be used as a means of harassment. See Fed. R. Civ. P. 33, Advisory Committee Notes to 1993 Amendments.

2) Despite the rule limiting interrogatories, the Plaintiff (whose counsel claims to have been "unaware" of Local Rule 26.1(C)) , on or about July 2, 2005, served on each Defendant separate sets of interrogatories numbering 25 and 20 each – that is, 45 numbered interrogatories in total.[2/] See Exhibits B and C. However, when counting discrete subparts of each of the 45 numbered interrogatories served by Plaintiff, a number of which contain more than 25 lines of single-spaced type, the Defendants conservatively estimate that the total number of interrogatories actually requested numbers over 250. See Exhibits B and C to Plaintiff's Motion.

3) For example, Plaintiff's Interrogatory No. 2 (Exhibit B at 6) asks that for each separate Complaint allegation that Hallmark denied in its Answer, Hallmark provide a detailed description of each and every reason why the denial was made, documents and witnesses supporting that denial, and what Hallmark contends the true facts surrounding that allegation to be. Because each Complaint allegation (and therefore, each denial) contains separate and distinct factual and/or legal allegations, and because the Defendants denied nearly 75 Complaint allegations in total, this single interrogatory actually contains no less than 75 separate interrogatories.[3/] See, e.g., Safeco of America v. Rawstron, 181 F.R.D. 441, 444 (C.D. Cal. 1998) (interrogatory asking responding party to state facts, identify witnesses, and identify documents supporting denial of each request for admission contained in set of 50 requests for admission should be construed as containing discrete subpart for each request for admission –

---

[2/]The Plaintiff attempts to make much of the fact that the Defendants' responses to her interrogatories were served four months after the Defendants received them. The Plaintiff conveniently fails to mention not only that the parties had agreed to suspend their outstanding written discovery for purposes of pursuing settlement, but that the Defendants served on the Plaintiff written discovery within days of receipt of the Plaintiff's interrogatories and that to date – over five months later – the Plaintiff has still not served her responses.

2

that is, 50 interrogatories); 7 Moore's Federal Practice 3d § 33.30[2] ("subparts need not be separately numbered to count as multiple interrogatories. Otherwise, a party could easily circumvent the rule simply by eliminating the separate numbering or lettering of subparts").

    4)    Indeed, many of the Plaintiff's interrogatories are even more expansive. For example, Plaintiff's Interrogatory No. 6 directed at Hallmark asks:

> For the years 1995 to present, inclusive, please *describe in detail* each and every instance in which *Defendant* contends *and or* in which it was alleged that a current *and or* former employee, agent, *and or* representative of *Defendant,* working in *and or* for any department of radiology owned or operated by *Defendant,* including but not limited to Plaintiff, *Defendant Chase and or* Karen Morganto, did not perform his/her job in a professionally competent manner, including but not limited to each and every instance in which *Defendant* contends *and or* it was alleged that a current *and or* former employee, agent, *and or* representative did not perform his/her work in a technically competent manner, each and every instance in which *Defendant* contends *and or* it was alleged that a current *and or* former employee, agent, *and or* representative did not maintain a professional attitude/work demeanor, each and every instance in which *Defendant* contends *and or* it was alleged that a current *and or* former employee, agent, *and or* representative was on the premises of any department of radiology owned or operated by *Defendant* under the influence of alcohol *and or* illegal drugs, and each and every instance in which *Defendant* contends *and or* it was alleged that a current *and or* former employee, agent, *and or* representative violated any of *Defendant's* rules, policies, *and or* procedures, including but not limited to those relating to work quality *and or* taking time off, including but not limited to sick, medical, *and or* FMLA leave, *describing in detail* how, when and where the current *and or* former employee, agent, *and or* representative failed *and or* allegedly failed to perform his/her job in a professionally competent manner, how and when *Defendant* became aware of the current *and or* former employee, agent, *and or* representative's actual *and or* alleged failure *describing in detail* who *communicated* what to whom, when, where and how, *identifying* all *persons Defendant* knows or suspects has knowledge of the current *and or* former employee, agent, *and or* representative's actual *and or* alleged failure to perform his/her job in a professionally competent manner, *describing in detail* how each person identified learned of the current *and or* former employee, agent, *and or* representative's actual *and or* alleged failure to perform his/her job in a professionally competent manner, *describing in detail* each and every act *Defendant* took in response to the current *and or* former employee, agent, *and or* representative's actual *and or* alleged failure to perform his/her job in a professionally competent manner, including but not limited to *describing in detail* who *communicated* what to whom, when, where and how about the current *and or* former employee, agent, *and or* representative's actual *and or* alleged failure to perform his/her job in a professionally competent manner, *identifying* each and every *document* in which

---

    [3]/Similarly, Plaintiff's Interrogatory No. 3 (Exhibit B at 6) asks for a detailed description of all factual and legal bases for each of the Defendants' nine separate affirmative defenses. Thus, Interrogatory No. 3 actually contains nine separate interrogatories.

> *Defendant* memorialized in whole or in part the current *and or* former employee, agent, *and or* representative's actual *and or* alleged failure, and for each and every instance in which *Defendant* contends that the current or former employee, agent, *and or* representative's actual *and or* alleged failure involves the current *and or* former employee, agent, *and or* representative actually *and or* allegedly violating any of *Defendant's* rule(s), policy(ies) *and or* procedure(s) in effect at the time of the alleged violation, *describe in detail* the substance of the rule(s), policy(ies) *and or* procedure(s) the current or former employee, agent, *and or* representative actually *and or* allegedly violated, the date(s) of its implementation and end, if any, *identify* all *documents* which contain the rule(s), policy(ies) *and or* procedure(s) or a summary thereof and *describing in detail* how each such rule(s), policy(ies) *and or* procedure(s) was communicated to Plaintiff specifically and *Defendant's* employees, agents, representatives in general.

Exhibit B at 7-8.

Thus, under the guise of a "single" interrogatory (and to the extent that the Defendants can even understand what is being asked in this interrogatory), the Plaintiff apparently seeks:

    a)    for a period of <u>ten years</u>;

    b)    for <u>every single Hallmark employee</u> of the hundreds who have worked in or for a radiology department in any of Hallmark's many hospitals and facilities;

    c)    extremely detailed information about no less than <u>five separate and distinct subjects</u>, including: 1) each employee alleged to be not performing in a professionally competent manner; 2) each employee alleged to be not performing work in a technically competent manner; 3) each employee alleged to be not maintaining a professional work attitude or demeanor; 4) each employee alleged to be under the influence of alcohol or drugs; and 5) each employee alleged to have violated Hallmark rules, policies and procedures;

    d)    and including still more detailed information concerning: 1) how and when Hallmark became aware of each instance of alleged misconduct; 2) "who communicated what to whom when, where and how" in this regard; 3) identifying all individuals with any knowledge of each instance of alleged misconduct; 4) how each such individual learned of the alleged misconduct; 5) describing in detail each and every action Hallmark took in response to the

alleged misconduct; 6) identifying each and every document pertinent to the each instance of alleged misconduct; 7) stating whether Hallmark believed in each such instance whether its rule(s) was violated and, if so, the date the rule was implemented, all documents relating to the rule, and how each rule was communicated to the Plaintiff specifically and all Hallmark employees generally.

This interrogatory, which is illustrative of all the Plaintiff's interrogatories, is quite simply ridiculous. Not only does it contain no less than 12 discrete subparts concerning five separate factual topics, it seeks a staggering amount of minute information of absolutely no relationship to the Plaintiff's claims in this matter – that a particular supervisor retaliated against her for taking leave from her job under the Family and Medical Leave Act and discriminated against her because of her age and/or alleged disability. Indeed, the work necessary for Hallmark to respond to this single interrogatory, which involves hundreds of Hallmark employees at up to five different locations over a period of ten years, would require dozens, if not hundreds, of man-hours.

5)  The Plaintiffs' other interrogatories are no less limited in time or scope and would require no less time and expense for Hallmark to respond to. For example:

a)  Interrogatory No. 7 (Exhibit B at 8) asks that Hallmark, from 1995 to the present, describe in detail each and every time one of its thousands of employees was absent from work for more than 3 days or more than 24 hours in any six month period, including each employee's name, the dates and hours that each employee was absent, the reason given for each absence, whether each employee was paid, and whether each employee was threatened with or actually disciplined <u>at any time, for any reason</u>;

    b)  Interrogatory No. 8 (Exhibit B at 8) asks that Hallmark, from 1995 to the present, provide a detailed listing of each of the hundreds of employees who worked in or for one of Hallmark's many radiology departments, describing in detail each employee's job title(s), work history, educational and professional background, compensation, benefits, absenteeism and supervisors; and

    c)  Interrogatory No. 18 (Exhibit B at 13) asks that Hallmark, from 1995 to the present, describe in detail each and every instance that it threatened or actually disciplined any of its thousands of employees <u>for any reason</u>.

  6)  These interrogatories, laughably enormous in scope and yet wholly unrelated to the Plaintiff's claims, are nothing less than outrageous and can only be seen as an attempt to harass the Defendants into a favorable settlement. Under these circumstances, the Plaintiff should not be allowed to propound an apparently unlimited number of interrogatories for purposes of a fishing expedition of colossal proportions. Indeed, based on the sheer quantity and detail of information sought in the Plaintiff's interrogatories as served, the Defendants cannot even begin to calculate the time and expense they would incur in having to respond to them.

  For all of these reasons, the Plaintiff's Motion for Leave to Propound More than Twenty-Five Interrogatories should be denied.

Respectfully submitted,

HALLMARK HEALTH SYSTEM, INC.

By its attorneys,

s/John M. Simon
Macon P. Magee (BBO #550602)
John M. Simon (BBO# 645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA  02110
(617) 542-6789

Dated: December 12, 2005